IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEVEN KRAWATSKY & SHIRA KRAWATSKY,<br>*Plaintiffs*,<br><br>v.<br><br>RACHEL AVRUNIN, *et al.*,<br>*Defendants*. | Civil Action No. ELH-18-297 |

**MEMORANDUM OPINION**

In this tort case, plaintiffs Steven Krawatsky ("Rabbi K") and Shira Krawatsky (collectively, the "Krawatskys"), filed a 57-count Complaint against multiple defendants: Rachel Avrunin and Joel Arunin (collectively, the "Avrunins"); Sharon Avrunin-Becker and Scott Becker (collectively, the "Beckers"); and Chaim Levin. ECF 1 (the "Complaint"). In the Complaint, plaintiffs contend, *inter alia*, that defendants engaged in a scheme "to damage Rabbi K and destroy his reputation" by false and scandalous accusations that he committed sexual child abuse, disseminated by way of social media, website domains, media outlets, and communications with multiple third parties. *See id.* ¶ 25. In particular, plaintiffs claim that defendants have falsely and repeatedly alleged that Rabbi K sexually molested the Avrunins' son ("B.A.") and the Beckers' son ("S.B."). *See id.* ¶¶ 6-30. And, they have engaged Levin to disseminate falsehoods on social media. *Id*. ¶¶ 26-29.

Pursuant to 28 U.S.C. § 1332, plaintiffs assert subject matter jurisdiction based on diversity of citizenship. *See id*. ¶ 5 ("Jurisdiction is proper with this Court due to the diversity of citizenship of the parties, who reside in Maryland, Georgia, and New York, and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00)"). The Complaint alleges numerous claims, all under Maryland law, including defamation, invasion of privacy, tortious

interference with economic relations, tortious interference with contractual relations, loss of consortium, intentional infliction of emotional distress, as well as conspiracy and aiding and abetting. *See id*. ¶¶ 31-387. Plaintiffs also seek injunctive relief, as well as compensatory and punitive damages. *Id*. ¶¶ 388-93.

In a joint motion, the Avrunins and Levin move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction in Maryland. ECF 5 (the "Motion"). In addition, all defendants move to dismiss under Fed R. Civ. P. 12(b)(3), for improper venue, or to transfer venue to the Southern Division of the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404. And, under Rule 12(b)(6), all defendants move to dismiss for failure to state a claim upon which relief can be granted. Plaintiffs oppose the Motion. ECF 8 (the "Opposition"). Defendants have not filed a reply, and the time for doing so has passed. *See* Local Rule 105.2.

Two matters stand out. Curiously, plaintiffs, who are domiciled in Maryland, claim diversity jurisdiction, even though the Beckers are also domiciled in Maryland. And, equally curious, the defense focuses on the claim of lack of personal jurisdiction as to Levin and the Avrunins, without raising a claim that the court lacks diversity jurisdiction because the Beckers are domiciled in Maryland. It is a hornbook principle of federal jurisdiction that, to invoke diversity jurisdiction, the parties on each side much be completely diverse.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, the Complaint must be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

# I. Factual Background[1]

Plaintiffs, husband and wife, allege that they are residents of Baltimore County, Maryland. ECF 1, ¶ 1; *Id*. ¶ 6. They claim that "Rabbi K has been a highly loved and respected teacher, counselor, and tutor for many years." *Id*. ¶ 10. He "has been a teacher for 19 years," having taught "for almost 15 years" at a well-respected Jewish day school in Baltimore County, Maryland. *Id*. ¶ 8. In addition, "[f]rom 2010 to 2015, Rabbi K was also a head counselor at Camp Shoresh, a summer camp for children in Adamstown, Frederick County, Maryland." *Id*. ¶ 9. Plaintiffs, who are the parents of four children, also assert that, "[u]ntil the summer of 2015, there had never been any allegation made that [Rabbi K] had harmed a child in any way." *Id*. ¶ 10.

The Avrunins reside in Dekalb County, Georgia. *Id*. ¶ 2. They are the parents of B.A., "who attended Camp Shoresh from June 22, 2015 through July 17, 2015." *Id*. ¶ 11. Plaintiffs assert that "BA was in Rabbi K's division of over 300 campers at Camp Shoresh during that camp session." *Id*.

The Beckers are residents of Montgomery County, Maryland. *Id*. ¶ 3. They are the parents of S.B, who "attended Camp Shoresh in the summers of 2014 and 2015." *Id*. ¶ 13. Plaintiffs claim that Joel Avrunin and Sharon Avrunin-Becker are "brother and sister." *Id*. ¶ 12. It follows that "[S.B.] and [S.A.] are first cousins." *Id*.

According to the Complaint, on August 13, 2015, B.A. "made an allegation of sexual abuse by Rabbi K to his parents, Defendants Rachel Avrunin and Joel Avrunin." *Id*. ¶ 14.

---

[1] At this juncture, I must assume the truth of the factual allegations. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In any event, Plaintiffs have submitted an affidavit with the Complaint, attesting that "[t]he facts and allegations contained in the foregoing Complaint are true and correct to the best of our knowledge, information, and belief." ECF 1-1 (Affidavit of the Krawatskys).

Plaintiffs maintain that B.A.'s allegation was false and that "[a]ll three of the individuals whom [B.A.] said were present during the alleged abuse denied said acts ever occurred." *Id*. ¶ 14.

Nevertheless, B.A.'s allegation was "reported by Defendant Joel Avrunin to the head of Camp Shoresh, Rabbi David Finkelstein." *Id*. ¶ 15. Also, the "allegation was brought to the attention of the Frederick County Sheriff's Office and the Frederick County Department of Social Services." *Id*. ¶ 16. In early September 2015, personnel at these county agencies interviewed Rabbi K and commenced an investigation. *Id*. ¶ 17. During Rabbi K's interview with the county sheriff, "Rabbi K flatly denied the allegations" made by B.A. and "agreed to submit to a polygraph examination, or 'lie detector' test, without hesitation." *Id*. According to plaintiffs, Rabbi K "passed the test without question." *Id*. And, at the conclusion of the investigation, "the Frederick County Sheriff's Office declined to pursue any charges against Rabbi K." *Id*. ¶ 18.

Plaintiffs maintain that, in the subsequent months, the Avrunins "continued to insist that their son was sexually abused by Rabbi K" and they "engaged in a calculated and coordinated campaign to destroy Rabbi K's reputation." *Id*. ¶¶ 19-20. The Complaint asserts that the Avrunins took the following actions, *id.* ¶ 21:

    a. Contacting Rabbi K's employer . . . and demanding that he be fired, alleging that he molested their child;

    b. Contacting personnel at Camp Shoresh and demanding that Rabbi K be fired, alleging that he molested their child;

    c. Contacting Rabbi K's synagogue and demanding that he be excluded from worshipping there, alleging that he molested their child;

    d. Contacting the community center where Rabbi K socializes and demanding that he be barred from the premises, alleging that he molested their child;

e. Contacting local publications in the Baltimore Metropolitan area and demanding that they publish an article alleging that Rabbi K molested their child.

In addition, plaintiffs claim the Avrunins told "numerous people in the community" that "Rabbi K molested their child"; "Rabbi K plea bargained a criminal case"; and "Rabbi K was placed on a five year sex offender registry." *Id*. Plaintiffs also aver that the Avrunins "threaten[ed] individuals who were supporting Rabbi K." *Id*. In response to the Avrunins' conduct, "[o]n or about April 4, 2016, Rabbi K, through counsel, demanded that [the Avrunins] cease and desist from their calculated and coordinated campaign to destroy Rabbi K's reputation and ability to earn a living." *Id*. ¶ 22.

Further, the Complaint claims that in late 2016, S.B. "alleged that he was sexually abused by Rabbi K at Camp Shoresh." *Id*. ¶ 23. Plaintiffs maintain that "[t]he six other individuals that [S.B.] said were present during the alleged acts of abuse were either unidentified or denied that any acts of abuse ever occurred." *Id*.

S.B.'s allegation, too, "was reported to the Frederick County Sheriff's Office and the Frederick County Department of Social Services." Plaintiffs claim that following an investigation, the office once again "declined to file any charges against Rabbi K." *Id*. ¶ 24. The Complaint asserts that, "despite the findings of the Frederick County Sheriff's Office, [the Beckers] have joined the efforts of [the Avrunins] to damage Rabbi K and destroy his reputation and ability to earn a living." *Id*. ¶ 25.

Plaintiffs also claim that, "upon information and belief," the Avrunins and Beckers "have been in contact with" Levin (*id*. ¶ 26), who resides in New York. *Id*. ¶ 4. And, "as a result of the contact," plaintiffs assert that "Levin has undertaken a deliberate and coordinated campaign on social media and the internet to damage Rabbi K, and to destroy his reputation and

ability to earn a living." *Id*. ¶ 27. Moreover, the Complaint states that, "[o]n or about November 10, 2017, Levin posted the [following] message" on Facebook, *id.* ¶ 28:

> Baltimore public safety announcement! Rabbi Shmuel Krawatsky aka Rabbi K, a current teacher at Beth Tfiloh and Youth Director at Suburban Orthodox is EXTREMELY DANGEROUS! He is alleged to have inflicted severe harm on multiple children. Please share widely and keep you children safe from this person! More details about this case will be forthcoming but I feel obligated to go on record and say that not only have many 'good people' and 'good organizations' known about this dangerous man, but they actively did NOTHING. The organizations that you rely on to protect your children completely messed up this case and failed the parents of these victims on every level possible. If you have any info on Rabbi K or believe your son was harmed, please contact Baltimore PD asap!

In addition, plaintiffs aver that Levin "secured websites in the name of Rabbi K . . . www.shmuelkrawatsky.com, www.shmuelkrawatsky.info, www.rabbishmuelkrawatsky.com, www.rabbishmuelkrawatsky.info, www.rabbirawatsky.com, and rabbikrawatsky.info." *Id*. ¶ 29. When accessed, the websites provide "information" regarding "the allegations of sexual abuse" against Rabbi K. *Id*.

Moreover, plaintiffs assert that the Avrunins sought "to convince media outlets to do a story on Rabbi K and the false allegations of sexual abuse." *Id*. ¶ 28. In particular, plaintiffs claim that the New York Jewish Week "ran an article on January 17, 2018 repeating the false allegations that Rabbi K sexually abused children and embellishing on them." *Id*. ¶ 30.

## II.  Discussion

As noted, plaintiffs have filed suit in federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. All of their claims are predicated on Maryland law.

Federal courts are courts of limited jurisdiction. *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Thus, a federal district court may

only adjudicate a case if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotation marks omitted). As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter." Indeed, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna,* 750 F.3d at 432.

Put another way, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377). Even where, as here, no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

Congress has conferred jurisdiction on the federal courts in several ways. To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. *Exxon Mobil Corp.,* 545 U.S. at 552; 28 U.S.C. § 1331. *See also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . ."). This is sometimes called federal question jurisdiction.

Under 28 U.S.C. § 1367(a), district courts are granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction

that they form part of the same case or controversy under Article III of the United States Constitution."

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. However, it is crystal clear that this so-called diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

The citizenship of the litigants is central when diversity jurisdiction is invoked. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). Notably, "state citizenship for diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Id*. (citation omitted). And, "the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Id*; *see also Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms."). In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Rather, a U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Id*.

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*,

191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). Put another way, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). This means that "a claim of federal question jurisdiction is to be resolved on the basis of the allegations of the complaint itself." *Burgess v. Charlottesville Sav. & Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973). Therefore, a complaint must contain allegations "'affirmatively and distinctly' establishing federal grounds[] 'not in mere form, but in substance' and 'not in mere assertion, but in essence and effect.'"[] *Id.* (citations omitted).

Of import here, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz v. Friend*, 599 U.S. 77, 95 (2010); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). For example, "the mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit'. . . ." *Bargess*, 477 F.2d at 43 (citations omitted).

The Krawatskys allege that they are "residents" of Baltimore County, Maryland (ECF 1, ¶ 1); the Avrunins are "residents" of DeKalb County, Georgia (*id.* ¶ 2); the Beckers are "residents" of Montgomery County, Maryland (*id.* ¶ 3); and Levin is a "resident" of Brooklyn, New York. *Id.* ¶ 4. In their Opposition, defendants do not dispute these allegations. ECF 5 at 2. As noted, with regard to natural persons, a party's citizenship for diversity purposes depends not on residence but rather on domicile. *See Axel*, 145 F.3d at 663. Nevertheless, it is patently evident in this case that residence and domicile are one and the same.

Assuming that the domicile of each party is the same as his or her residence, the Complaint plainly does not allege *complete* diversity of citizenship. With exceptions not

applicable here, and as noted, diversity jurisdiction under 28 U.S.C. § 1332 "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co.*, 636 F.3d at 103 (emphasis added). Here, plaintiffs are citizens of Maryland and the Beckers are also citizens of Maryland. On the face of the Complaint, there is no diversity of citizenship.

Because complete diversity of citizenship does not exist in this case, this Court lacks subject matter jurisdiction. Moreover, plaintiffs have failed to establish any other basis for federal jurisdiction. Accordingly, the Complaint must be dismissed, without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

### III. Conclusion

For the reasons stated above, I shall dismiss the Complaint, without prejudice, pursuant to Fed. R. Civ. P. 12(b)(1).

An Order follows.

Date: September 21, 2018                              /s/
                                                     Ellen L. Hollander
                                                     United States District Judge